UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION


LOIS CARSON,                          CIVIL ACTION
          Appellant                   NO. CV07-0997-A

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER       JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                   MAGISTRATE JUDGE JAMES D. KIRK
          Appellee


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE


Lois Kathryn Carson ("Carson") filed an application for disability insurance benefits on March 29, 2004, alleging a disability onset date of December 4, 2002 (Tr. p. 94). That claim was denied by the Social Security Administration ("SSA") (Tr. p. 50).

A de novo hearing was held before an Administrative Law Judge ("ALJ") on September 19, 2005, at which Carson appeared with her attorney and a vocational expert ("VE") (Tr. p. 324). The ALJ found that, although Carson has severe impairments of degenerative

disc disease, diabetes mellitus, and obesity, she has the residual functional capacity for a limited range of light work and can work as an information clerk (Tr. p. 45). The ALJ concluded that Carson was not under a disability as defined in the Social Security Act at any time through the date of his decision on December 13, 2005 (Tr. p. 46).

The Appeals Council granted Carson's request for review and found the ALJ failed to address the issue of the transferability or nature of Carson's work skills (Tr. p. 78). The Appeals Council remanded the case to the ALJ to obtain supplemental evidence from vocational expert to determine whether Carson has transferable work skills (Tr. p. 78).[1]

A supplemental hearing was held on October 19, 2006, at which Carson appeared with her attorney and a VE (Tr. p. 351). The ALJ found that Carson meets the disability insured status requirements through March 31, 2007, has not worked since December 4, 2002, and has severe impairments of degenerative disc disease of the lumbar spine, diabetes, obesity, and fibromyalgia, but does not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. p. 17). The ALJ further found that Carson has the residual functional capacity to perform light work except as

---

[1] The Appeals Council further noted that Carson had filed a new claim for DIB on December 22, 2005 (Tr. p. 106), which was duplicative, and ordered the two claims to be consolidated (Tr. p. 79).

limited by her ability to stand and walk no more than a total of five hours in an eight hour workday and no more than one hour continuously, and sit a total of up to three hours in a workday and no more than forty-five minutes continuously (Tr. p. 18). The ALJ concluded that Carson, an individual closely approaching advanced age, with at least a high school education and acquired work skills, is able to perform her past relevant work as an activity director at a convalescent home or such sedentary jobs as billing clerk, telephone solicitor, and teacher's aide and, therefore, was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on January 22, 2007 (Tr. pp. 23-25).

The Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Carson next filed this appeal for judicial review of the ALJ's decision. Carson raises the following issues for review on appeal:

> 1. Whether the Commissioner erred as a matter of law in failing to comply with 20 C.F.R. § 404.1527 by filing to accord adequate weight to the opinions of the plaintiff's treating sources.
>
> 2. Whether the Commissioner committed reversible error in failing to recontact plaintiff's treating medical providers as provided by 20 C.F.R. § 404.1512(e).
>
> 3. Whether the Commissioner erred as a matter of law in failing to resolve the conflict between the Dictionary of Occupational titles and the VE's testimony as required by Social Security Ruling 00-4p.

The Commissioner filed a brief in response to Carson's appeal. Carson's appeal is now before the court for disposition.

## Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a

preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

<u>Summary of Pertinent Facts</u>

1. Medical Records

In November 2002, Carson, then 48 years old, was referred to Dr. David M. Remedios, a general surgeon, by her chiropractor, Mr. Rubenstein (Tr. pp. 218, 237).  Dr. Remedios found abdominal tenderness with mild distension and right upper quadrant pain; he ordered an MRI, a CT scan, a bone scan, and a mammogram, and prescribed Flexeril, Vioxx, and Vicodin ES for pain (Tr. p. 218). On December 4, 2002, Dr. Remedios noted that Carson has a bulging disc at L3-L4 near the L4 nerve root (Tr. pp. 217-221).

In December 2002, Carson was referred by Dr. Remedios to Dr. Babson Fresh, a neurosurgeon (Tr. pp. 210, 236).  Dr. Fresh found Carson was 5'5" tall, weighed 222 pounds, and her blood pressure was 136/86 (Tr. p. 212).  Carson admitted that, although she took Glucotrol XL for her diabetes, she was not sure how well her diabetes was controlled because she did not always follow her diet and did not check her blood sugar at home, although she had the equipment to do so (Tr. pp. 211, 311).  Dr. Fresh ordered an MRI of Carson's lumbar spine, and diagnosed mechanical low back pain, minor bulging discs at L3-4, L4-5, and L5/S1, diabetic peripheral neuropathy, and obesity (Tr. pp. 210-214, 310-316).  Dr. Fresh did not recommend surgical intervention and told Carson to lose weight (Tr. pp. 210, 310).

In January 2003, Dr. Remedios noted that Carson needed to rule

out fibromyalgia and chronic fatigue syndrome, and referred her to
Dr. Jonathan Forester, a family practice doctor (Tr. pp. 216, 250).
Dr. Forester diagnosed mild chronic back pain, L3-5 bulging discs,
and insomnia (Tr. p. 248). In August 2004, Dr. Forester found
Carson's right hand had dull sensation to pinprick and diagnosed
chronic pain (Tr. p. 246).

In April 2004, Carson was again evaluated by Dr. Fresh, who
noted she was an obese, middle aged female in reasonably good
health (Tr. p. 307). Carson stood upright, did not limp, was not
unsteady, she had good forward bending, fair extension, her right
and left lateral bending were limited by her truncal obesity, she
had mild tenderness from L2 to S2 and over the sacroiliac joint
(greater left than right), straight leg raises were negative to 90
degrees, her motor exams was bilaterally normal from the hip girdle
down, and she had decreased sensation in both lower extremities
consistent with her history of diabetic peripheral neuropathy (Tr.
p. 308). Dr. Fresh found Carson has mechanical low back pain
secondary to minor disc pathology (minor bulging discs at L3-4, L4-
5 and L5/S1) aggravated by her obesity, and noted she weighed
exactly the same as she did when he saw her before (Tr. p. 308).
Dr. Fresh stated that he again discussed the problem of her weight
distribution, explaining she was disproportionately heavier above
the waist than below and emphasizing that she needed to lose weight
in order to relieve her back pain (Tr. pp. 308-309). Dr. Fresh

prescribed Relafen for pain and Skelaxin for muscle spasms, and stated there was no indication to consider lumbar epidural steroid injections (Tr. p. 309).

On July 7, 2004, Carson was evaluated by Dr. John P. Sandifer, an orthopedic surgeon, at the request of Disability Determinations (Tr. pp. 226, 238).  Dr. Sandifer noted Carson's complaints of chronic neck and right shoulder pain, with pain radiating down into her right arm, numbness in both hands, lower back pain, pain radiating into her light leg, occasional numbness in both legs, and diabetes with early neuropathy (Tr. p. 226).  Dr. Sandifer found Carson has right shoulder tenderness, a normal neurological exam of the upper extremities, back pain bilaterally at 90 degrees, equal reflexes bilaterally, no motor weakness in the lower extremities, a moderate decrease in the L5/S1 disc space, a protruding disc at L3/L4 with possible compression of the L4 nerve root, degenerative changes in the facet joints, and some degenerative disc disease (Tr. pp. 226-227).  Dr. Sandifer diagnosed chronic tendonitis with impingement syndrome in the right shoulder, chronic cervical syndrome with intermittent nerve root irritation, lumbar degenerative disc disease with chronic back, right hip and leg pain, and probable early diabetic neuropathy in both lower extremities (Tr. p. 227).  Dr. Sandifer found that Carson cannot do any repetitive overhead lifting with the right upper extremity, below shoulder level lifting should be restricted to no more than

ten pounds, can sit for 30 to 45 minutes at a time but not more than three hours total in an eight hour day, cannot do repetitive stooping, crawling or climbing, cannot operate foot controls repetitively with the right lower extremity, can stand no more than 45 minutes to an hour and no more than five hours total in an eight hour day, and should use a cane, crutch or walker when she has muscle spasms in her back or acute episodes of back pain (Tr. p. 227).

In September 2005, Gary J. Rubenstein, D.C., a chiropractor, reviewed Carson's medical records, noting she continued to complain of low back pain, neck pain, numbness in both arms and hands, right leg pain, and a generalized muscle spasm that happens at any time in any position without warning (Tr. pp. 254-255). Rubenstein stated that Carson cannot work because she cannot remain in one position for any appreciable length of time, cannot lift or carry more than five pounds, and cannot bend, crawl or kneel (Tr. p. 255).

In October 2005, Dr. Forester wrote that Carson does not have fibromyalgia, but that her bulging discs with nerve root effacement, being treated by Mr. Rubenstein and Dr. Fresh, were the obvious cause of her chronic low back pain (Tr. p. 262). Dr. Forester stated that Carson's back pain is exacerbated by sitting for longer than thirty minutes (Tr. p. 262). He found Carson had some sensory loss in her right hand and she complained of

difficulties using the hand for gross manipulative movements (Tr. p 262).  For pain relief, Carson had been visiting a chiropractor regularly and using daily applications of ice/heat to her affected areas (Tr. p. 262).  Dr. Forester stated he would defer to Dr. Fresh, who was treating Carson's back condition, for an opinion of Carson's ability to work (Tr. p. 262).

In August 2006, Carson's chiropractor noted chronic myofascial fibrositis secondary to her degenerative disc disease in the lumbosacral spine and cervical spine, and spinal misalignment at L4 and C5 (Tr. p. 284).  Carson was to continue her medical treatment with Dr. Forester and ask Dr. Fresh about epidural injections in the L4-5 area (Tr. p. 284).

In August 2006, Dr. Fresh reported that Carson's gait and station were unremarkable, her lumbar spine was fair on forward bending, extension, and right and left lateral bending, with no specific area of tenderness over the lumbar spine, but tenderness over the sacral coccygeal area (Tr. p. 302).  Carson did not have sciatic notch tenderness, her straight leg raising was negative, and her motor exam was normal in both lower extremities (Tr. p. 302).  Carson's MRI showed significant facet arthropathy at L4-5 and L5-S1, as well as degenerative disc changes at L3-4, L4-5, and L5-S1, but there was no evidence of spinal stenosis or neuroforaminal encroachment on any of the nerve roots.  Dr. Fresh diagnosed possible fibromyalgia and facet arthropathy with chronic

10

low back pain, and recommended that she see Dr. Forester about getting a non-narcotic analgesic (Tr. pp. 302-303).

In October 2006, Dr. Forester stated that Carson cannot work full time, and advised against her lifting even ten pounds (Tr. p. 282).  Dr. Forester noted that Dr. Fresh was treating her for back pain (Tb. p. 282).

## 2. 2005 Administrative Hearing

At her first administrative hearing, on September 19, 2005, Carson testified that she was 51 years old, right handed, about 5'5" tall, and weighed about 220 pounds (Tr. pp. 324, 327).  Carson completed high school, can read, write and do basic arithmetic, and was a licensed floral designer until she developed severe allergies (Tr. pp. 328-329).  Carson testified that she has managed several flower shops, has worked in retail ladies' wear, can operate a cash register, has supervised other people, has had to keep financial reports, has worked as a resident activity director and transportation manager (her favorite job), and has worked in a library, driving the library van and making deliveries (Tr. pp. 329-330, 343-344).  Carson became unable to lift bags of books due to back pain (Tr. p. 330).  Carson testified she has gained about ten pounds since she stopped working (Tr. pp. 327-328).  Carson testified that she lives with her husband and her mother-in-law and that her husband works (Tr. p. 328).

Carson testified that she can walk about ten minutes at her

own pace, can stand about ten minutes, and can sit comfortably for
ten to fifteen minutes (Tr. p. 331).  Carson testified that, on a
typical day, she may have a hangover if she took all eleven of her
medications the previous day, she gets up at about 8 a.m., uses
heat or ice packs, watches television, and drinks a pot of coffee
(Tr. p0. 332-333).  Carson testified she will then do a few chores
around the house, but she does not do yard work (Tr. p. 333).
Carson testified that she does laundry, cooks light meals or
casseroles, does some grocery shopping, goes to Wal-Mart, and walks
to her mailbox (Tr. pp. 333-365), but her husband does most of the
grocery shopping (Tr. p. 342).  Carson does not have any hobbies;
she can no longer do floral designing, sewing, or bead work because
her arms and hands start hurting if she does hand work, and she has
to get up every ten minutes or so due to pain (Tr. p. 334).  Carson
testified she reads for about an hour at a time in bed (Tr. p. 334)
and watches TV a lot (Tr. p. 337).  Carson testified that she
visits with her mother, her children, and others every day (Tr. p.
335).  Carson drives an automatic transmission car (Tr. p. 328) on
short trips four or five times a week (Tr. p. 335); sometimes she
takes her mother-in-law to the doctor (Tr. p. 337).  Carson goes to
Church on Sundays (Tr. p. 335).  Carson testified that she likes to
spend time in the sun because she it seems to help her aches and
pains a lot (Tr. p. 337).  Carson babysits her three year old
grandchild, though her husband is present, also (Tr. p. 337), and

12

gives her mother-in-law her medication (Tr. p. 337).

Carson testified that she sees Dr. Forester for her diabetes, about every three months (Tr. p. 332). Carson testified that her shoulder and neck problems have worsened since 2002 (Tr. p. 336). Carson takes medication for pain and sees a chiropractor two or three times a week (Tr. pp. 336, 341). Carson also testified that, after Dr. Remedios examined and tested her in 2002, he told her she should stop working due to her back problems (Tr. p. 339); at that time, Carson was working at the library (Tr. p. 339).

Carson uses ice gel packs on her back every night, all night long, and two or three times a day, for an hour or two, every day (Tr. pp. 340-341). Carson also uses heat to release tension in her neck and shoulders (Tr. p. 341). Carson testified that she takes muscle relaxers and anti-inflammatories (Tr. p. 341). Carson has tried pool therapy, cortisone injections in her hip, a muscle stimulator unit, and relaxation therapy (Tr. pp. 341-342).

Carson testified that she is very sensitive to the side effects of her medications, such as the hangover caused by taking Neurontin (Tr. p. 342). Carson testified that she has to lie down for about an hour every hour or two during the day (Tr. pp. 342-343), but she only wakes up once or twice during the night (Tr. p. 343).

In response to a hypothetical question involving a person of Carson's age, education and work experience, who can lift and carry

13

ten pounds occasionally and five pounds frequently, stand and walk for about five hours in an eight hour day and one hour continuously, sit for three ours in an eight hour day and three-quarters of an hour continuously, and cannot do over shoulder work with the right arm, the VE testified that such a person could do sedentary work such as surveillance system monitor, which is unskilled work that does not require the use of the hands (Tr. pp. 347-348). The VE further testified that a job which would require occasional reaching but not involving overhead reaching with the right hand would be information clerk (semiskilled, sedentary) (Tr. p. 348).

### 3. 2006 Administrative Hearing

At her second administrative hearing, on October 19, 2006 (Tr. p. 351), Carson testified that she was 52 years old, about 5'5" tall, weighed about 220 pounds, had a twelfth grade education, was a licensed florist and a certified cake decorator, had done some sales management, had been an activity director in a nursing home/rehabilitation center, and had been the preschool outreach project manager for a public library (Tr. pp. 355-357).

Carson testified that, at the library, she delivered bags of books through the parish and kept records (Tr. pp. 356-357). At the nursing home, Carson planned the activity calendar, coordinated programs for residents at the facility, did some traveling, scheduled transportation, and supervised others (Tr. pp. 357-358).

14

In the florist business, Carson managed a florist, took orders, ensured that deliveries were made, and dealt with people, purchasing, and merchandise (Tr. p. 358).

Carson testified she can lift five to ten pounds comfortably, can walk and stand about ten minutes on concrete floors, and a little longer on carpet or wood floors, and can sit fifteen to twenty minutes comfortably (Tr. p. 359). Carson testified that her anti-inflammatory medications take the edge off her pain (Tr. p. 360). Carson also takes Cymbalta for depression and to help her central nervous system where her nerves are irritated and inflamed (Tr. p. 360). Carson testified that she cries a lot and can be very snappy (Tr. p. 360).

On a typical day, Carson watches TV for about two hours total and reads for about an hour total if she feels like she can hold a magazine or a book (Tr. p. 360). Carson uses her computer occasionally and drives 2 to 3 times a week (Tr. p. 361). Carson testified that she stopped doing grocery shopping one and a half to two years ago (Tr. pp. 361-362). Carson testified that she does small amounts of laundry, does some cooking, and gives medicine to her mother-in-law, who has Alzheimer's (Tr. p. 362). Carson testified that her husband does all of the grocery shopping (Tr. p. 361) and her mother-in-law does some of the laundry (Tr. p. 362). Carson visits with family and friends (Tr. pp. 362-363). Although Carson testified that she is unable to walk, although she has been

15

advised to exercise by her doctors (Tr. p. 363).  Carson testified
that she has not been to church for several weeks and is unable to
do hobbies very much, although she enjoys quilting when she can
(Tr. p. 363); her problems with her hands and her back limit her
ability to quilt (Tr. p. 363-364).

Carson testified that the medications she takes for the pain
in her back give her headaches and causes forgetfulness and
confusion (Tr. pp. 364, 371).  Carson testified that she has
trouble concentrating and remembering things (Tr. p. 371).

Carson testified that two doctors advised her to quit working
because her job at the library was causing her more pain and back
problems (Tr. p. 364).  Carson takes medications and injections for
fibromyalgia and pain (Tr. p. 365).  Carson also uses ice packs,
heat, and relaxation therapy, and sees a chiropractor and a massage
therapist for her pain (Tr. p. 366).  Carson testified that her
husband gives her massages at home (Tr. p. 366).  Carson also
testified that she has purchased adaptive aids, such as a shower
bench, kitchen aids, and special inner soles for her shoes  (Tr.
pp. 367-368).  Carson testified she can pick up a nickel and a
penny, with either hand, once or twice, but doing so repetitively
is painful (Tr. pp. 367-368).  Walking causes pain in Carson's
feel, legs, and hips (Tr. p. 368).

Carson testified that she has spent her savings on medical
bills, and that her husband had to keep working after retirement to

16

support them (Tr. p. 369).  Carson does some of the housework during the day, then her husband does the rest after work (Tr. p. 370).

The VE testified that Carson's past work as a library assistant was light, semi-skilled work, her past work as an activity director at an assisted living facility and a rehab hospital was semi-skilled, light work activity, her past work as a floral designer/manager was semi-skilled, light work activity, and her past work as a sales clerk was semi-skilled, light work activity (Tr. pp. 372-373).  Carson has work skills in people skills, artistic skills, knowledge of how a library operates, and record-keeping skills (Tr. p. 373).  The VE further testified that a person such as Carson, who can perform sedentary work, could perform such sedentary jobs as billing clerk, telephone solicitor, or teacher's aide (Tr. pp. 374-375).

The VE testified that a person who can perform modified light/modified sedentary work involving lifting and carrying ten pounds occasionally and five pounds frequently, standing and walking five hours in an eight hour day with up to one hour continuously, and sitting three hours in an eight hour day with three-quarters of an hour continuously, could work as an activity director (Tr. pp. 375-376).  The VE further testified that, if Carson had to lie down for an hour and a half during the work shift or if she had problem using her hands, she could not work at any

17

job (Tr. p. 376).  The VE testified that, if Carson could only sit for twenty minutes then stand for ten minutes, there would not by many jobs she could perform since she would need to alternate sitting and standing so frequently (Tr. p. 379).  Also, if Carson could not do fine manipulation more than occasionally, there would not be many jobs she could perform (Tr. p. 379).  However, the jobs of telephone solicitor and teacher's aide, although sedentary, could be performed standing up as well, but could not be performed if there her limitations in fine manipulation with the hands (Tr. p. 380).

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Carson (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131

L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Carson has not engaged in substantial gainful activity since December 4, 2002, that her disability insured status expired on March 31, 2007, and that she has severe impairments of degenerative disc disease of the lumbar spine, diabetes, obesity, and fibromyalgia, but does not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. p. 17).  The ALJ further found that Carson has the residual functional capacity to perform light work except as limited by her ability to stand and walk no more than a total of five hours in an eight hour workday and no more than one hour continuously, and to sit no more than three hours total in a workday and no more than forty-five minutes continuously (Tr. p. 18).  The ALJ concluded that Carson, an individual closely approaching advanced age, with at least a high school education and acquired work skills, is able to perform her past relevant work as

19

an activity director at a convalescent home, and can also perform such sedentary jobs as billing clerk, telephone solicitor, and teacher's aide, therefore, was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on January 22, 2007 (Tr. pp. 23-25).  Although the ALJ found there was other work existing in significant numbers in the national economy, the sequential analysis ended at Step 4, with the finding that Carson could perform her past relevant work and thus was not disabled.

<u>Law and Analysis</u>

<u>Ground No. 1 - Treating Doctors' Opinions</u>

Carson argues the ALJ failed to give adequate weight to the opinions of Dr. Forester, her treating physician, and Gary Rubenstein, her chiropractor.  Specifically, Carson contends the ALJ improperly rejected their opinions that Carson cannot work full time at any exertional level.

The weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. <u>Elzy v. Railroad Retirement Board</u>, 782 F.2d 1223, 1225 (5th Cir. 1986);  <u>Jones v. Heckler</u>, 702 F.2d 616, 621 (5th Cir. 1983).  An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings.  <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. 1981).  The ALJ is required

20

to give substantial weight to the doctors' medical findings, not to their opinions about the actual availability of work for a person. Loya v. Heckler, 707 F.2d 211, 214 (5th Cir. 1983).

Mr. Rubenstein sent Carson to Dr. Forester and Dr. Fresh for treatment of her back pain (Tr. p. 284). Dr. Fresh is also one of Carson's treating doctors. Dr. Forester specifically stated that he defers to Dr. Fresh's opinion as to Carson's ability to work (Tr. p. 262). Dr. Rubenstein and Dr. Forester deferred to Dr. Fresh's opinion because he is treating Carson's back pain and he is a neurosurgeon with the requisite expertise in back problems, while Mr. Rubenstein is a chiropractor and Dr. Forester is a family practice doctor. The deference given to opinions of treating physicians is not unlimited. As with any expert witness, a treating physician's opinion is subject to criticism as being outside his or her area of expertise. Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991).

According to Dr. Fresh, Carson's bulging discs are minor and her symptoms will be substantially alleviated if she loses weight because her back problems are directly caused by and aggravated by the excess weight she carries above the waist. Dr. Fresh also noted that Carson had not lost any weight at all between 2002 and 2004, and it is clear from Carson's medical records that she did not lose any weight between 2004 and 2006.

Dr. Sandifer, an orthopedic surgeon, evaluated Carson's

21

ability to work and stated Carson cannot do any repetitive overhead lifting with the right upper extremity, below shoulder level lifting has to be restricted to no more than ten pounds, she can sit for 30 to 45 minutes at a time but not more than three hours total in an eight hour day, she cannot do repetitive stooping, crawling, climbing, or operating foot controls repetitively with the right lower extremity, she stand for 45 minutes to an hour at a time but no more than five hours total in an eight hour day, and she should use a cane, crutch or walker when she has muscle spasms in her back or acute episodes of back pain (Tr. p. 227). `The ALJ adopted Dr. Sandifer's work restrictions for his residual functional capacity assessment.

It is obvious that, despite Carson's many and varied efforts to alleviate her pain, she has made no attempt to do the one thing her treating neurosurgeon has repeatedly told her she needs to do - lose weight. If a claimant does not follow the prescribed treatment without a good reason, she will not be found disabled. 20 C.F.R. § 404.1530(b). A medical condition that can reasonably be remedied by treatment is not disabling. Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). Also, Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); 20 C.F.R. §§ 404.1530, 416.930. Carson has never explained her lack of weight loss; there is no evidence that she has made any attempt whatsoever to lose weight, as her doctor instructed, there is no evidence that she has a problem with weight

22

loss, and she has not sought any help for weight loss.  Therefore, the evidence of record shows that Carson has been non-compliant with the treatment given her by Dr. Fresh.  Although, as Carson testified, Dr. Fresh prescribed medication to alleviate her symptom of back pain, his medical records make it clear that weight loss is the remedy for her back problems.

Although Carson contends the ALJ erred in rejecting the opinions of Dr. Forester and Rubenstein because they are her treating doctors, Dr. Forester treats Carson's diabetes (although he apparently also prescribes pain medication) and Rubenstein is her chiropractor.  Dr. Fresh treats Carson's back problems, and both Forester and Rubenstein have deferred to him as her treating physician.  Therefore, the ALJ did not err in giving more weight to the opinion of Dr. Fresh as to the extent and severity of Carson's back problems than to the opinions of Dr. Forester and Mr. Rubenstein.

The ALJ also did not err in following the work limitations described by Dr. Sandifer when he assessed Carson's ability to work.  Dr. Sandifer and Dr. Fresh had substantially the same findings in their orthopedic examinations of Carson. Dr. Forester's and Rubenstein's opinions that Carson cannot do any work are not supported by the evidence, and they also failed to stipulate specific work limitations.  Therefore, the ALJ did not err in rejecting their opinions in favor of the opinions of Carson's

23

treating neurosurgeon and the orthopedic surgeon who evaluated her physical limitations.

This ground for relief is meritless.

Ground No. 2 - Contacting Medical Providers

Next, Carson contends the ALJ committed reversible error in failing to recontact plaintiff's treating medical providers, Dr. Forester and Mr. Rubenstein, as provided by 20 C.F.R. § 404.1512(e).  However, Section 404.1512 states the ALJ should recontact medical sources "[w]hen the evidence we receive from you treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled."   In Carson's case, there was sufficient medical evidence in the record to determine whether Carson is disabled.   Moreover, neither Forester nor Rubenstein was Carson's treating physician for her back problems.   If the ALJ had needed additional information concerning Carson's back problems, he would have contacted Dr. Fresh.   Therefore, this ground for relief is also meritless.

Ground No. 3 - VE's Testimony

Finally, Carson contends the ALJ erred as a matter of law in failing to resolve the conflict between the Dictionary of Occupational titles and the VE's testimony as required by Social Security Ruling 00-4p.  Carson contends the conflict lies in the fact that sedentary work involves sitting most of the day, while the ALJ found Carson cannot sit more than three hours total in an

24

eight hour day.  However, the VE testified that the jobs he found, billing clerk telephone solicitor, and teacher's aide, did not require sitting, and that Carson would be able to sit or stand at will.  Therefore, there is no conflict in that evidence.

In any event, it was unnecessary for the ALJ to resolve the conflict because the ALJ found Carson could return to her past relevant work as an activity director, thereby ending the analysis at Step 4 and rendering the VE's testimony and findings at Step 5 irrelevant.

This ground for relief is also meritless.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Carson's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

**WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of June, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

26